UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CURTIS BRIDGES, | ) | Case No.: 1:04 CV 117 |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| MARGARET BRADSHAW, | ) | |
| | ) | |
| Respondent | ) | <u>ORDER</u> |

On January 23, 2004, Petitioner Curtis Bridges ("Bridges") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence after pleading guilty in state court to trafficking in cocaine in an amount exceeding 1,000 grams, in violation of O. R .C. § 2925.03, and possession of cocaine exceeding 1,000 grams, in violation of O. R. C. § 2925.11. (Petition, ECF No. 1.) This case was referred to Magistrate Judge James S. Gallas for preparation of a Report and Recommendation on Bridges's § 2254 Petition. The Magistrate Judge issued his Report and Recommendation on January 10, 2006, recommending that final judgment be entered in favor of the Respondent and that Bridges's Petition be denied. (ECF No. 20.) Bridges filed Objections to the Magistrate Judge's findings. (ECF No. 23.)

Upon careful *de novo* review of the Magistrate Judge's Report and Recommendation and all other relevant documents in the record, this court finds that the Magistrate Judge's conclusions are fully supported by the record and controlling case law. Accordingly, the court adopts as its own the

Magistrate Judge's Report and Recommendation for the reasons stated by the Magistrate Judge, as well as the additional reasons stated herein.

## I. BACKGROUND

### A. Events Leading to Bridges Arrest and Indictment

On May 11, 2001, Patrolman Jack Butcher ("Butcher") of the North Olmsted Police Department observed a Cadillac speeding and signaled the driver to pull over. (*See Ohio v. Bridges*, Case No. 80171, slip op. 2 (Ohio Ct. App. July 25, 2002), attached as Ex. 12 to Def.'s Return of Writ, ECF No. 10.) Upon approaching the car, Butcher saw Bridges in the driver's seat and Co-Defendant Malika Poole ("Poole") in the passenger seat. Bridges told Butcher that the car was a rental, but he could not locate the rental contract. Bridges was also unable to produce a valid driver's license, but he did have an Ohio State identification card. Poole was likewise unable to produce either a driver's license or State ID. (*See id.*)

Butcher returned to his cruiser to check the vehicle's status and Bridges's driver license and warrant status. The check revealed that Bridges had a warrant for his arrest, that his driving status in Ohio was suspended, and that Poole's temporary Ohio driver's permit had expired. The dispatch center contacted Patrolman Chris Fox ("Fox") to respond to Butcher's location so that they could arrest Bridges on the warrant. Upon Fox's arrival, Butcher approached Bridges in the vehicle and advised him of what was happening. Butcher removed Bridges from the car, patted him down, and placed him in the back of the cruiser. (*See id.* at 3.)

Bridges asked Butcher if Poole could drive the car away, but Butcher said no because there was no valid rental agreement. Butcher then informed Bridges that he would be doing an inventory of the vehicle. The North Olmsted Police Department requires an inventory of all vehicles prior to

being towed. Butcher and Fox performed an inventory of the vehicle and discovered a large quantity of cocaine. (*See id.* at 4.)

On May 17, 2001, Bridges was indicted for one count of possession of cocaine in an amount exceeding 1,000 grams, in violation of O. R. C. § 2925.11, and one count of trafficking in cocaine in an amount exceeding 1,000 grams, in violation of O. R. C. § 2925.03. Both of these counts are felonies of the first degree with mandatory terms of incarceration of ten years. Additionally, violation of O.R.C. § 2925.11 included a Major Drug Offender's specification which allowed the sentencing judge to run an additional one to ten years consecutively on the underlying mandatory ten years. (*See id.* at 1, 3.)

### B. Bridges's Suppression Hearing and Sentence

On May 31, 2001, June 13, 2001, and June 15, 2001, Bridges filed motions to suppress, maintaining that all evidence relating to his arrest for possession and trafficking cocaine should be excluded because Butcher lacked probable cause for the initial stop, and the search exceeded the scope of an inventory search. An evidentiary hearing on Bridges's motion to suppress was conducted on June 18, 2001. (*See id.* at 3, 4.) During the hearing, a counter supervisor from Alamo Rental Car at Cleveland Hopkins Airport testified that the vehicle driven by Bridges had been rented by a female named Beatrice Hunter. Pursuant to company policy, no one other than Beatrice Hunter was authorized to drive the rented car. Additionally, Butcher testified that he saw Bridges's car traveling at a speed greater than the posted 60 mph. He testified that he activated his laser gun on Bridges's car and received a reading of 76 mph. He took a second reading and it was 64 mph. Butcher testified that Bridges slowed down once he saw the cruiser. Butcher also testified that neither Bridges nor Poole had a driver's license on their person and that a check revealed that

Bridges had a suspended license and an outstanding warrant from South Euclid. Butcher testified that he decided to tow the car because neither party could produce the rental papers for the car. Finally, he testified that he was required to perform an inventory prior to towing a car. (*See id.* at 5-6.)

On June 21, 2001, the trial court denied Bridges's motion to suppress, finding that Butcher had probable cause to stop and detain Bridges since he was speeding. The court also found that the inventory search was legal. (*See id.* at 6.)

On June 21, 2001, Bridges pleaded guilty to the indictment of trafficking in cocaine in an amount exceeding 1,000 grams, in violation of O. R. C. § 2925.03 and possession of cocaine exceeding 1,000 grams, in violation of O. R. C. § 2925.11. (*See id.* at 6.) On July 31, 2001, Defendant was sentenced to a mandatory term of ten years on each underlying count, and to five years on the Major Drug Offender specification, to run consecutively, totaling 25 years. (*See id.* at 6.)

## II. PETITIONER'S FIRST GROUND FOR RELIEF

In his first ground for habeas relief, Bridges argues that he was denied a full and fair hearing on his motion to suppress. (Petition at 3, ECF No. 1.) The Magistrate Judge found that collateral review of this claim was foreclosed by *Stone v. Powell*, 428 U.S. 465 (1976). (R&R, 3, ECF No. 20.) In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. In *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982), the Sixth Circuit explained that *Stone* requires a habeas court to make two inquiries to determine if a Fourth

Amendment claim may be reviewed. First, a habeas court "must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether the presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id.* at 526.

The record in this case establishes that Bridges requested and received a hearing on his motion to suppress. Bridges was given the opportunity to present evidence, witness testimony and argument to the trial court in support of his motion. Additionally, Bridges appealed the trial court's denial of his motion to suppress to the Ohio Court of Appeals, Eighth District, County of Cuyahoga. The state appellate court affirmed the state trial court's denial of Bridges's motion to suppress. Accordingly, there was "a state procedural mechanism" which allowed Bridges "to raise his fourth amendment claim" and "the presentation of the claim" was not "frustrated," as the mechanism did not fail. *Id.* Bridges had a full and fair opportunity to litigate his Fourth Amendment claim before the state courts. Consequently, as the Magistrate Judge concluded, because the State of Ohio provided Bridges an "opportunity for full and fair litigation" of his Fourth Amendment claim, this court may not grant federal habeas corpus relief on Bridges's first ground for relief. *Id.* Therefore, Bridges' first ground for relief, that he was denied a full and fair hearing concerning his motion to suppress, is denied.

### III.  BRIDGES'S SECOND, THIRD, AND FOURTH GROUNDS FOR RELIEF

In his second ground for relief, Bridges argues that he was sentenced to consecutive terms of imprisonment amounting to 25 years and that this constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments because "this was a single act and a single possession of the same drugs."  (Petition at 3.)  In his third ground for relief, Bridges argues that he "received three

- 5 -

(3) sentences for possession of the same drugs in violation of his rights under the Fifth Amendment not to receive multiply [sic] punishment[s] for the same offense." (Petition at 4.) In his fourth ground for relief, Bridges argues that at his sentencing hearing, the court "relied upon the court's investigation outside of the courtroom" and that he was "denied a fair and impartial tribunal" and denied his right to confront and cross-examine witnesses, in violation of the Fifth, Sixth, and Fourteenth Amendments. (Petition at 4.) Accordingly, Bridges's second, third, and fourth grounds for habeas relief all relate to the constitutionality of his sentence.

**A. The Requirement of Fairly Presenting Constitutional Claims to the State Court**s

The Magistrate Judge determined that Bridges had not previously presented these three grounds for relief to the Ohio state courts. (R&R, 4.) Before a state prisoner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254, he must exhaust his state court remedies by fairly presenting all of his constitutional claims to the highest state court, and to all appropriate prior state courts. *See* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275-276 (1971); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). Consequently, "[f]ederal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004) (citing *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

In the Sixth Circuit, fair presentation of a federal constitutional issue to a state court requires that the issue be raised by at least one of the following four options:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional

- 6 -

>     right; or (4) alleging facts well within the mainstream of
>     constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005) (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citation omitted)).

Although Bridges litigated his sentencing claims all the way to the Supreme Court of Ohio, he did not challenge his sentence on federal constitutional grounds. In both his appeal to the Ohio Court of Appeals, filed with assistance of counsel, and his appeal to the Ohio Supreme Court, also filed with the assistance of counsel, Petitioner failed to meet any of the four criteria necessary to constitute fair presentation of a federal claim under *Whiting*. When Bridges appealed to the Ohio Court of Appeals, he raised the following arguments of error:

> 1. The Court erred when it denied the defendant's Motion to Suppress and For the Return of Illegally Seized Property.
> 2. The Court erred in sentencing the appellant to consecutive sentences and in sentencing him to the gross sentence of twenty-five years.
> 3. The Court erred when it imposed the maximum sentences possible for the charges made herein on the basis of R.C. of Ohio, §2925.03(C)(4), i.e., Count I (Preparation of Drugs for Shipment, etc.) and §2925.11(C)(4), i.e., Count II (Possession of More Than 1,000 Grams of Cocaine).
> 4. To the extent the Court relied on facts that were not a part of the trial record made in this case, as distinguished from that made in the trial of the co-defendant, the appellant was denied due process.
> 5. The Court erred in sentencing the defendant consecutively on Counts I and II, the drug possession charge and the preparation for shipment charge involving the same drugs.

(Bridges's Appellate Brief, Case No. 80171, attached as Ex. 8 to Def.'s Return of Writ, ECF No. 10; Bridges's Supplemental Brief attached as Ex. 10 to Def.'s Return of Writ.)

When Bridges appealed to the Supreme Court of Ohio, he presented the following arguments:

- 7 -

> 1. Due process is denied when a trial court, particularly in a drug possession case, rotely [sic] credits the testimony of a police officer in reaching its decision to deny a Motion to Suppress.
> 2. Due process is denied when the Court imposes the maximum sentences possible for the charges made herein on the basis of R.C. of Ohio, §2925.03(C)(4), i.e., Count I (Preparation of Drugs for Shipment, etc.) and §2925.11(C)(4), i.e., Count II (Possession of More Than 1,000 Grams of Cocaine).
> 3. To the extent the Court relied on facts that were not a part of the trial record made in this case, as distinguished from that made in the trial of the co-defendant, the appellant was denied due process.
> 4. The Court erred in sentencing the defendant consecutively on Counts I and II, the drug possession charge and the preparation for shipment charge involving the same drugs.

(Bridges's Mem. in Supp. of Jurisdiction, attached as Ex. 13 to Def.'s Return of Writ.) The Supreme Court declined jurisdiction, finding that the issues raised did not involve any substantial constitutional questions. (Supreme Court of Ohio Entry, Case No. 02-1605, attached as Ex. 15 to Def.'s Return of Writ.) Bridges's claims as discussed in his briefs to the Ohio state courts challenging his sentence did not employ any state or federal case law using a constitutional analysis,[1] his arguments were not phrased in terms of federal constitutional law, and he did not allege facts well within the mainstream of constitutional law. *See Whiting*, 395 F.3d at 613.

**1. References to Due Process Without More are Insufficient**

---

[1] Bridges did cite to federal case law in support of his evidentiary claim to the Court of Appeals that the trial court "erred when it denied [Bridges's] Motion To Suppress and For the Return Of Illegally Seized Property." (*See* Bridges's Appellate Brief, attached as Ex. 8 to Def.'s Return of Writ.) However, this claim related to the constitutionality of his seizure and subsequent search, and did not relate to his sentence - as his second, third and fourth grounds for habeas relief do. As previously discussed, this court is precluded by *Stone* from reviewing Bridges's Fourth Amendment claim, as presented in his first ground for habeas relief. *See Stone*, 428 U.S. 465.

- 8 -

One could argue that because Bridges did utilize the term "due process" in his headings in his briefs to the Ohio state courts, that he met the requirement of "phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right. . . ." *Id.* However, the Sixth Circuit has made clear that "'general allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated.'" *Blackmon*, 394 F.3d at 400 (citing *McMeans*, 228 F.3d at 681 (quoting *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (6th Cir. 1984))).

In *Blackmon*, the habeas petitioner's only citations to federal authority in his state briefs were "claims in his brief headings and conclusions that admission-of-evidence errors and prosecutorial misconduct violated his rights to a fair trial and due process," and "secondary citations to federal cases to support his state-based evidentiary and misconduct claims." *Id.* The Sixth Circuit noted that the petitioner had not cited "federal case law identifying how errors such as those at his trial constitute[d] denials of 'fair trial' and 'due process' rights, nor how his case mirrored cases in which such denials [had] been found." *Id.* at 400-401. Consequently, the Sixth Circuit reasoned that the petitioner had "failed to develop any cogent arguments regarding those rights beyond the naked assertion that they were violated" and concluded that "such presentation [was] insufficient" to constitute a fair presentation of the claims to the state courts for review. *Id.*

In the instant case, as in *Blackmon*, Bridges failed to fairly present his second, third, and fourth grounds for habeas relief to the state courts for review. Like *Blackmon*, where the petitioner had not cited "federal case law identifying how errors such as those at his trial constitute[d] denials of 'fair trial' and 'due process' rights, nor how his case mirrored cases in which such denials [had] been found," Bridges did not cite to, or rely on, any federal cases discussing denials of due process

- 9 -

in support of his claims challenging his sentence.[2] *Id.* at 400-401.  Nor did Bridges cite to, or rely on, any state cases that incorporated the federal standards for finding violations of due process.

Additionally, as in *Blackmon* where the petitioner's due process and violation of the right to a fair trial claims appeared only in his "brief headings and conclusions," 394 F.3d at 400-401, Bridges's claims of violations of due process appear only in his brief headings and in the very first sentence of the introduction in his brief to the Ohio Supreme Court.  Otherwise, Bridges does not even use the term "due process," let alone explain what he meant by due process, or how he thought it had been violated.  (*See* Bridges's Mem. in Supp. of Jurisdiction.)  As the Sixth Circuit held in *Blackmon*, "[a] petitioner need not cite 'chapter and verse' of constitutional law, *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987), but 'general allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present claims' that specific constitutional rights were violated.'" *Blackmon*, 394 F.3d at 400-401 (citing *McMeans*, 228 F.3d at 681 (citing *Petrucelli*, 735 F.2d at 688-89)).  Therefore, Bridges's general references to due process, without further analysis or reference to federal or state cases employing federal constitutional analysis, is insufficient to find that he fairly presented his second, third, and fourth grounds for habeas relief to the Ohio State Court for review.

### 2. Bridges's Failure to Challenge the Imposition of Consecutive Sentences on Federal Constitutional Grounds

---

[2] In his brief to the Court of Appeals, Bridges only cites case law in support of his evidentiary claim and fails to cite any case law or federal law in support of his claims challenging his sentence.  Bridges's brief to the Ohio Supreme Court cites no cases, federal or state, other than *Katz v. United States*, 389 U.S. 347 (1967), in support of his claim that "due process is offended when a trial court, particularly in a drug possession case, rotely credits the testimony of a police officer in reaching its decision to deny a motion to suppress."  *Katz* is a Fourth Amendment case with no due process analysis.  *Id.*

- 10 -

Though it does not allege a violation of due process in its heading, Bridges's fourth proposition of law before the Ohio Supreme Court argued that the trial court erred in sentencing him consecutively for the possession and preparation for sale of the same drugs and this argument aligns with Bridges' second ground for habeas relief, where he argues that his sentence to consecutive terms of imprisonment constitutes cruel and unusual punishment. However, Bridges failed to challenge the imposition of consecutive sentences on federal constitutional grounds as he did not employ any state or federal caselaw using a constitutional analysis, his arguments were not phrased in terms of federal constitutional law, and he did not allege facts well within the mainstream of constitutional law. *See Whiting*, 395 F.3d at 613. In his brief to the Ohio Supreme Court challenging the imposition of consecutive sentences, Bridges argued that the "imposition of consecutive sentences is governed by [Ohio Revised Code] § 2929(14)(4)." (Bridges's Mem. in Supp. of Jurisdiction, 13.) As the Magistrate Judge observed, Bridges did not "imply that a constitutional principle was at issue" (R&R 6) because Bridges only argued that the trial court committed error under Ohio Law. Bridges did cite to the United States Sentencing Guidelines, "[b]y way of comparison," but did not argue for sentencing under the federal guideline. (Bridges's Mem. in Supp. of Jurisdiction, 14.) Consequently, Bridges did not fairly present the constitutional basis for his second ground for habeas relief to the Ohio state courts. *See Whiting*, 395 F.3d at 613

### 3. Bridges's Failure to Fairly Present Constitutional Issues to the State Court

For the reasons discussed above, and those reasons discussed in the Report and Recommendation, this court concludes that although Bridges used the term "due process" and made a claim similar to his second ground for habeas relief challenging the imposition of consecutive sentences, Bridges did not fairly present the constitutional issues in his second, third, and fourth

- 11 -

grounds for habeas relief to the Ohio state courts, as required before a state prisoner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254. *See Whiting*, 395 F.3d at 613; 28 U.S.C. § 2254(b), (c). Accordingly, 28 U.S.C. § 2254(b)(1) precludes consideration of those claims by this court.

### B. Waiver/Procedural Default

In addition, "[a] federal court is also barred from hearing issues that could have been raised in the state courts, but were not, and now may not be presented to the state courts due to a procedural defect or waiver." *Deitz v. Money*, 391 F.3d at 808 (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). In *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001), the Sixth Circuit recognized Ohio's doctrine of res judicata which applies when the petitioner could have raised a claim before the state court, but failed to. *Id.* (citing *Smith v. Anderson*, 104 F. Supp. 2d 773, 794 (S.D. Ohio 2000)) ("The failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under Ohio's doctrine of res judicata.") Bridges could have asserted the federal constitutional basis for his second, third, and fourth grounds for habeas relief to the Ohio Court of Appeals and to the Supreme Court of Ohio, but he did not. Consequently, the doctrine of res judicata operates as a procedural bar and Bridges would now be unable to present these claims to the Ohio state courts.

In order for a claim to be procedurally defaulted: (1) there must be a state procedural rule applicable to the petitioner's claim with which he did not comply; (2) the state courts must actually enforce the state procedural rule in regard to claims such as raised by petitioner; and (3) the state procedural forfeiture must be an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Maupin v. Smith*, 785 F.2d 135, 138 (6th

Cir. 1986); *see Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). If these three factors are met, the court may still excuse the default if the petitioner can demonstrate that there was cause for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138; *see Monzo*, 281 F.3d at 576.

In applying the *Maupin* factors for determining procedural default to Bridges's second, third, and fourth grounds for relief, this court finds that because Bridges failed to raise the federal or constitutional basis for these arguments before the Ohio state courts when he appealed the trial court's denial of his motion to suppress, and again later when he appealed to the Supreme Court of Ohio, the first and second *Maupin* factors are met. *See Jacobs*, 265 F.3d at 417. In applying the third *Maupin* factor, this court finds, as the Magistrate Judge indicated, that the doctrine of res judicata employed by the State of Ohio is "an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim." *Maupin*, 785 F.2d at 138 (citation omitted); (R&R 8.) Accordingly, the three *Maupin* factors for finding Bridges's second, third, and fourth grounds for relief to be procedurally defaulted are met.

### C. Cause and Prejudice

This court may still excuse the default if Bridges can demonstrate that there was cause for him not following the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138; *see Monzo*, 281 F.3d at 576. Bridges makes no such showing. In his Objections to the Report and Recommendation, Bridges reargues that his grounds for relief as presented in his habeas petition were fairly presented to the Ohio state courts. (Pet.'s Objections, 4-5, ECF No. 23.) This court has already discussed and determined that Bridges's second, third and fourth grounds for habeas relief were not fairly presented to the Ohio state courts.

- 13 -

Bridges also argues that "any claim of procedural default must be excused because petitioner had received ineffective assistance of counsel. . . . Petitioner's overriding claim was that he was denied effective assistance of counsel on appeal." (Pet.'s Objections, 5.)  Nowhere in Bridges's Petition for Habeas Corpus (ECF No. 1) or Traverse and Brief of Petitioner (ECF No.16), does he ever argue, or even mention, ineffective assistance of appellate counsel.[3]  Because Bridges never claimed ineffective assistance of appellate counsel, Bridges's objection on this ground, in an attempt to show cause, is denied.  Accordingly, as the Magistrate Judge concluded, Bridges has failed to show cause and prejudice under *Maupin* and thus, federal review of Bridges's second, third and fourth grounds for relief is barred. (R&R 8.)

---

[3] The court notes that Bridges's counsel on appeal before the Ohio state courts and his current counsel are not the same.  Bridges's counsel on appeal before the Ohio state courts was James R. Willis.  Bridges's counsel on his habeas petition before this federal court is Paul Mancino, Jr.

## IV. MERITS

Even if Defendant had shown cause and prejudice, it appears likely that his claim that the 25-year sentence constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments would be unsuccessful in light of Supreme Court precedent. Specifically, the Supreme Court in *Hutto v. Davis,* 454 U.S. 370, 374-75 (1982), denied a defendant's writ of habeas, holding that no violation of the Eighth and Fourteenth Amendments occurred when the defendant was sentenced in state court to two consecutive 20-year prison terms and two fines of $10,000 for intent to distribute and distribution of nine ounces of marijuana. The Court based its holding on *Rummel v. Estelle*, 445 U.S. 263 (1980).

In *Rummel,* the defendant was sentenced to life imprisonment under the Texas recidivist statute upon being convicted of his third felony - obtaining $120.75 by false pretenses. 445 U.S. at 265-66. The defendant in *Rummel*, like the defendant in *Hutto* and Bridges here, argued that the length of his imprisonment was so grossly disproportionate to the crime for which he was sentenced that it violated the ban on cruel and unusual punishment under the Eighth and Fourteenth Amendments. *Id*. The Court rejected the defendant's argument and held there was no constitutional violation. *Id*. at 265. The *Hutto* court stated that "[R]*ummel* stands for the proposition that federal courts should be '[reluctant] to review legislatively mandated terms of imprisonment' and that 'successful challenges to the proportionality of particular sentences' should be 'exceedingly rare.'" *Hutto,* 454 U.S. at 374 (internal citations omitted). Significantly, the Supreme Court recently affirmed that *Rummel* remains good law. *See Lockyer v. Andrade,* 538 U.S. 63, 77 (2003) (holding that it was not an unreasonable application of clearly established law under *Rummel* for the California Court of Appeals to affirm the defendant's sentence of two consecutive terms of 25 years

to life in prison under California's "three strikes" law for two felony counts of petty theft for stealing videotapes valued under $200).

Here, like the defendant in *Huto*, Bridges received two consecutive sentences based on possession of the same drugs. In fact, Bridges's 25- year sentence is less than the *Hutto* defendant's 40-year sentence. Bridges's 25-year sentence also is less than the *Rummel* defendant's life sentence for obtaining $120.75 by false pretenses and the *Lockyer* defendant's 50-year sentence for two felony counts of petty theft. Therefore, while Bridges's lengthy sentence appears harsh, the Supreme Court has held that such a sentence does not violate the Eighth and Fourteenth Amendments. Accordingly, even if Bridges could show cause and prejudice, it is unlikely that he could prevail on his constitutional claims.

## V. PETITIONER'S NEWLY RAISED *BLAKELY* CLAIM

In his Notice of New Authority, Bridges argues in essence that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004) because the Major Drug Offender specification of O. R. C. § 2925.11 under which Bridges was sentenced to an additional five years, was recently held to be unconstitutional by *State v. Foster*, 109 Ohio St. 3d 1, 29-30 (2006). (Pet.'s Notice of New Authority, 2-3, ECF No. 24.)

The trial court sentenced Bridges to a mandatory term of ten years on each count, to run consecutively, for trafficking in cocaine in an amount exceeding 1,000 grams in violation of O. R. C. § 2925.03 and possession of cocaine exceeding 1,000 grams, in violation of O. R. C. § 2925.11. The trial court also imposed an additional five years on the Major Drug Offender specification of O. R. C. § 2925.11, also to run consecutively, resulting in a total sentence of 25 years.

If a defendant commits a drug trafficking crime where the amount of cocaine exceeds 1,000 grams, he is a Major Drug Offender, "and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional mandatory prison term prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the Revised Code." O. R. C. § 2925.11(C)(4)(f); *Ohio v. Gonzales*, No. C-010757, 2002 WL 31094801, *8-*9 (Ohio Ct. App. Sept. 20, 2002).

In *Foster*, the Ohio Supreme Court held that certain aspects of Ohio's sentencing statutes were constitutionally prohibited under *Blakely*. The *Foster* Court determined, in relevant part, as follows:

> Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas. As was reaffirmed by the Supreme Court in [*United States v.*] *Booker*, "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." [543 U.S. 220, 244 (2005).]
>
> ***
>
> Because R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, they are unconstitutional. Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences, they are unconstitutional. Because R.C. 2929.14(D)(2)(b) and (D)(3)(b) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant, before repeat violent offender and major drug offender penalty enhancements are imposed, they are unconstitutional. [citations omitted.]

*Foster*, 109 Ohio St. 3d at 25.

The Ohio Supreme Court excised the unconstitutional provisions of its sentencing statutes in accordance with the Supreme Court's remedial action in *Booker*, 543 U.S. at 234 (severing and excising unconstitutional provisions of United States Sentencing Guidelines rather than invalidating sentencing guidelines in their entirety), and held that any Ohio cases "pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion." *Foster*, 109 Ohio St. 3d at 31.

Habeas review under § 2254 is collateral review, *not* direct review.  As such, the holding in *Foster* does not permit this court to grant habeas relief on Bridges's newly-raised *Blakely* claim. At the time of Bridges's sentence in 2001 and on direct review, the Major Drug Offender specification under which Bridges was sentenced to an additional five years was constitutional. Therefore, Bridges's newly-raised *Blakely* claim fails as this court is unable to grant habeas relief.

## V. CERTIFICATE OF APPEALABILITY

The court must now consider, pursuant to 28 U.S.C. § 2253, whether to grant a certificate of appealability ("COA") as to any of Bridges's claims raised in his Petition.  That statute states in relevant part:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . .
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

28 U.S.C. § 2253.  In *Slack v. McDaniel*, 529 U.S. 473 (2000), the Supreme Court determined that

> to obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."

*Id.* at 483-84 (quoting *Barefoot v. Estelle*, 463 U.S. 880 (1983)).

The Court determined that if the claim is not procedurally defaulted, then a habeas court need only determine whether reasonable jurists would find the district court's decision "debatable or wrong." *Id.* at 484. However, where the district court has determined that a claim is procedurally defaulted, it must engage in a two-step analysis to determine if a COA should issue as to the claim. In such an instance, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Pursuant to this standard, the court will now determine whether it should grant a COA as to any of Bridges's claims.

For the reasons stated in this Order and in the Magistrate Judges's Report and Recommendation, the court finds that reasonable jurists would not find the decision to deny Bridges's first ground for habeas relief, that he was denied a full and fair hearing on his motion to suppress, "debatable or wrong." Accordingly, the court declines to issue a certificate of appealability as to Bridges's first ground for relief. Regarding Bridges's second, third, and fourth grounds for relief, which this court found to be procedurally defaulted for failure to exhaust administrative remedies, this court also finds for the reasons stated in this Order and in the Magistrate Judge's Report and Recommendation, that jurists of reason would not find it debatable whether Bridges stated valid claims of the denial of constitutional rights. Further, this court finds

- 19 -

that jurists of reason would not find it debatable whether this court was correct in its procedural ruling when it concluded that Bridges's second, third, and fourth grounds for relief had been procedurally defaulted and that Bridges had not shown cause. Accordingly, the court declines to issues a certificate of appealability as to any of Bridges's grounds for habeas relief.

## VI. CONCLUSION

For the foregoing reasons, the court adopts the Magistrate Judge's Recommendation that Bridges's Petition for a Writ of Habeas Corpus (ECF No. 1) be denied and that final judgment be entered in favor of the Respondent.

IT IS SO ORDERED.

/s/SOLOMON OLIVER, JR.
UNITED STATES DISTRICT JUDGE

August 30, 2007